RECEIVED

AUG - 2 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **THERESA A. JEANSONNE** | * | **CIVIL ACTION NO. 04-2288** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **BY CONSENT OF THE PARTIES** |

## REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision is **AFFIRMED,** and this matter is **DISMISSED.**

## I.     Background

The claimant, Theresa A. Jeansonne ("Jeansonne"), age 33, filed a claim for supplemental security income payments on May 13, 2002, on the basis that she was disabled due to fractured discs, carpal tunnel syndrome, depression, and arthritis in the back. She had an eighth-grade education, and had past work experience as a farm worker and casino change person.

The record reflects that Jeansonne was seen at Huey P. Long Medical Center on January 2, 2001, with complaints of low back pain and left leg pain and weakness She was prescribed Skelaxin, Darvocet and Naproxen, and was referred for physical

therapy. On December 12, 2001, she reported minimal improvement, and was instructed on a home exercise program.

On January 22, 2002, claimant saw Dr. Arsham Naalbandian, a neurologist, with complaints of cervical pain with occasional hand numbness, and low back and lower extremity pain with some intermittent paresthesias. On motor examination, Jeansonne had symmetrical movements of the extremities with no weakness or atrophy. Sensory examination was unremarkable. Claimant's gait was essentially normal.

On musculoskeletal examination, Jeansonne had definite tenderness in the lumbar spine from L4 through S1. She had a mild degree of limitation of straight leg raising test on the left. Tinel sign was mildly positive at the flexor wrist on the right.

EMG/NCV studies showed a mild degree of carpal tunnel syndrome on the right side and normal lower extremities with no evidence of degenerative change to indicate motor root abnormality. Dr. Naalbandian recommended conservative treatment for the carpal tunnel syndrome with splints.

An MRI revealed a small annular tear at L5-S1 with a small central protrusion without significant direct neural compression. Dr. Naalbandian's impression was low back and lower extremity pain, more on the left. He recommended neurosurgical evaluation by Dr. G. Andrew Wilson.

On examination by Dr. Wilson, Jeansonne had a normal, erect stance. Her gait was normal with good heel, toe and tandem walking. There was no spasm of the lumbar spine and full range of motion with no pain.

Motor evaluation of the lower extremities was normal. Claimant had no muscular atrophy. Sensory examination revealed slightly decreased sensation in the L5 dermatone on the left. Straight leg raising was negative.

Dr. Wilson's diagnoses were morbid obesity and a slight annular tear by MRI. He saw no need for surgery, but recommended epidural steroid injections, weight loss, and smoking cessation.

Subsequently, Jeansonne had three injections, but complained to Dr. Naalbandian that her symptoms had not responded. Dr. Naalbadian recommended conservative treatment. He opined that her neurologic status was stable.

In a Physical Residual Functional Capacity Assessment performed by Disability Determination Services, claimant was found to be able to lift/carry 50 pounds occasionally and 25 pounds frequently. She could stand, walk and sit about 6 hours in an 8-hour workday. She had unlimited push/pull ability, and no postural limitations. Her allegations were found to be partially credible.

Jeansonne was also treated for anxiety and depression. Dr. Fay Thrasher Carbo performed a consultative examination on September 7, 2002. She opined that

3

claimant appeared to understand, mildly retain, and follow instructions. She noted that Jeansonne did sustain attention to perform simple tasks, and related well to others on a one-on-one basis.

Dr. Carbo's diagnosis was rule out depressive disorder, NOS, and depression and anxiety by history. Based on observation and claimant's history, Dr. Carbo opined that claimant's prognosis appeared guarded. Jeansonne appeared capable of managing her funds.

In the Psychiatric Review Technique, claimant was assessed for her history of depression and anxiety. She was found to have mild restrictions as to activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. Claimant's allegations were credible, but her symptoms were less than severe.

Jeansonne was treated at Avoyelles Mental Health from November 12, 2003 to February 10, 2004 for depression. She had taken Hydroxyzine for anxiety, but discontinued it because it made her sleepy. (Tr. 282). The diagnoses were rule out mild depressive disorder with psychotic features and rule out schizoaffective disorder. Medication management, diet, and exercise were recommended.

On September 17, 2002, Jeansonne was seen at Huey P. Long Medical Center for complaints of back pain radiating to the left leg, and arm numbness at night.

Lumbar spine x-rays showed mild disc space narrowing at L5-S1 and minimal osteophyte formation at T12-L1 and L1-L2. A cervical spine series dated July 3, 2003 showed no definite acute injury.

At the hearing on February 19, 2004, Jeansonne testified that she was 5 feet 2 inches tall and weighed 260 pounds. She stated that she had gained about 12 pounds within two years. She lived with her husband and three children ages 14, 10 and 3.

Jeansonne reported that she had last worked in 1996 as a casino change person. She stated that she had quit because she could not handle the noise or carrying the heavy coin bags anymore. Additionally, she had farmed sweet potatoes with her husband until 1999, which they stopped because a drought had destroyed their crop.

Regarding complaints, Jeansonne testified that she had intermittent pain and stiffness in her neck which extended down into the shoulder joints. She also complained of carpal tunnel syndrome, which caused numbness in both hands every other day. Additionally, she reported low back pain which extended into her legs, aching in the knees and feet, constant gastritis, depression, and problems with sleeping.

Jeansonne reported that she had received two epidural steroid injections, which had helped a little. She also stated that she took pain medication, which made her drowsy. Additionally, she took medication for depression and gastric ulcers.

As to restrictions, Jeansonne testified that she drove, but became nervous while driving. She stated that she could sit for about half an hour and stand for approximately 20 minutes before having to change positions. She reported that she needed to use both hands to pick up things because of carpal tunnel syndrome.

Regarding activities, Jeansonne reported that she could cook, wash dishes and do laundry in small increments. She also planted flowers, but said that she had some difficulty with kneeling, bending and stooping. Additionally, she grocery shopped, but had some problems with being around the crowds.

Vocational expert ("VE") Beverly Prestonback also testified at the hearing. The ALJ posed the first hypothetical in which he asked the VE to assume a claimant of the same age, education and work experience; who had the residual functional capacity to perform simple, routine, repetitive light work which did not require climbing of ladders, ropes, or scaffolds; required only occasional climbing of ramps and stairs, and required occasional balancing, stooping, kneeling, and crouching, no crawling, and frequent, but not constant, handling and fingering with the right hand. In response, Ms. Preston back testified that claimant would be able to perform her past relevant work as a casino cashier. She also identified the light and sedentary jobs of general office clerk and assembler.

When the ALJ changed the hypothetical to assume a claimant who could perform frequent handling and fingering with both hands, but was limited to only occasional contact with the general public, Ms. Prestonback testified that claimant's past job at the casino would be eliminated, but general office clerk would be acceptable. For the third hypothetical, the ALJ asked the VE to assume a claimant who could perform only occasional handling and fingering with the right hand. In response, Ms. Prestonback testified that such claimant could work the light job of surveillance monitor. Finally, when the ALJ inquired whether there would be any jobs available to a claimant who was physically unable to work eight hours a day, five days a week, the VE testified that there would not.

When Jeansonne's attorney asked whether the number of security monitor jobs would be eroded for a claimant who became sleepy because of medications, Ms. Prestonback confirmed that it would.

**Law and Opinion**

On appeal, Jeansonne argues that the ALJ erred: (1) in failing to account for the side effect of sleepiness caused by her medications at Step 5 of the sequential evaluation process; (2) in relying on the vocational expert's response to an inaccurate hypothetical, and (3) in failing to assign adequate credibility to her pain complaints.

As to the first argument, the record reflects that the ALJ recognized Jeansonne's complaint of drowsiness from her medication. (Tr. 15). However, the medical records show that her only complaint of drowsiness was made to the healthcare workers at Avoyelles Mental Health regarding Hydroxyzine. (Tr. 47, 282). At that time, Hydroxyzine was discontinued. There is no evidence that Jeansonne ever took this medication again. Claimant's subjective complaints must be supported by objective medical medical findings. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). Accordingly, this argument lacks merit.

Next, Jeansonne argues that the ALJ erroneously found that despite her carpal syndrome, she could still work as a cashier, general office clerk and assembler. She further asserts that the ALJ failed to incorporate her testimony regarding her sitting and standing limitations into the hypotheticals to the vocational expert.

As to the first contention, the EMG and NCV studies showed only a "[m]ild degree of Carpal Tunnel Syndrome on the right side." (Tr. 160). Dr. Naalbadian recommended conservative treatment, rather than surgery, for this "mild" condition. (Tr. 154). The ALJ acknowledged this condition in his hypothetical by including the limitation as to "frequent handling and fingering on the right hand," but "not constant." (Tr. 62). Thus, the ALJ's finding that she could perform work even with carpal tunnel syndrome was not error.

8

Regarding the second assertion, claimant's testimony as to her ability to sit for only half an hour and stand for 20 minutes before having to change positions is not supported by the medical evidence. (Tr. 46-47). Dr. Wilson found that Jeansonne had a normal, erect stance, normal gait, and good toe, heel and tandem walking. (Tr. 167). He additionally noted that she had no spasm, full range of motion in the lumbar spine, normal motor examination of the lower extremities, and no muscular atrophy. Further, the MRI showed no direct neural compression. These findings do not support claimant's complaints of constant, unremitting pain.

Additionally, the ALJ noted that Jeansonne did not display any of the indices associated with chronic pain. (Tr. 18). It is settled that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, could itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378,1384 (5th Cir. 1988). The ALJ's findings are supported by the record, as Dr. Wilson found no limitations in range of motion, no atrophy, and a need for weight loss.

As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or his representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir.

2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, Jeansonne argues that the ALJ failed to assign adequate credibility as to her complaints of pain. In support of this argument, she attaches new medical records, including an MRI report dated September 29, 2004 indicating that she had a "moderate size right paracentral T6-T7 disc herniation," for which she underwent a thoracic spine fusion on November 22, 2004. (rec. doc. 7, Exhibits A, B).

When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

While some of the medical records which claimant submits as new evidence are dated after the ALJ's decision of August 19, 2004, others are dated before the Appeals Council's notice of October 7, 2004. Jeansonne has shown no "good cause" for failing to submit these records to the Appeals Council for review.

Additionally, Jeansonne has not shown that these reports are "material." To warrant remand, the new evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567; 20 C.F.R. § 404.970(b). Until the submission of the MRI report and surgical records, which were dated after the ALJ's decision, claimant presented no evidence which showed that she had a disabling musculoskeletal impairment. The evidence now sought to be submitted by claimant concerns either a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Accordingly, it does not constitute a basis for remand. The appropriate action regarding these facts is to use the evidence as the basis for a new disability application.

In any event, claimant has not shown that she met the listing under section 1.04 during the relevant time period. As determined by the ALJ, she has not demonstrated a herniated disc, spinal stenosis, spinal arachnoiditis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture resulting in a compromise of a nerve root

or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04. (Tr. 16). The ALJ's findings are supported by the medical record, most significantly those of the treating medical experts, Dr. Dr. Naalbandian and Dr. Wilson. Accordingly, his opinion as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, the Commissioner's decision is AFFIRMED and this action is DISMISSED with prejudice.

Signed this 2 day of _August_, 2005, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE